IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRAVIS R. ROWLEY,

        Plaintiff,

        v.                                No. 10cv1182 WJ/WDS

APD DETECTIVE KEVIN MORANT,

        Defendants.[1]

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE REGARDING EXPERT WITNESSES

THIS MATTER comes before the Court upon Plaintiff's Motion in Limine Regarding Expert Witnesses, filed September 18, 2012 **(Doc. 52)**. Plaintiff alleges that Defendants violated his constitutional rights under the United States Constitution, maliciously prosecuted him, and defamed him under State law. Having reviewed the parties' briefs and applicable law, I find that Plaintiff's motion is well taken and, accordingly, it is GRANTED.

## BACKGROUND

Plaintiff alleges that Defendants coerced him into making false confessions that he and a co-worker, Michael Lee ("Lee"), murdered an elderly Korean couple in December 2007, and that he was wrongfully detained for a murder he did not commit.[2] Plaintiff was a magazine salesman who was canvassing the neighborhood where the murder took place two days after the murder. Defendants delayed conducting the DNA analysis which eventually exonerated Plaintiff and revealed that the murder was committed by Clifton Bloomfield ("Bloomfield") and Jason Skaggs. Plaintiff alleges that Defendants withheld the results of the DNA analysis while

---

[1] Certain Defendants have been dismissed from this lawsuit, namely, District Attorney Kari Brandenburg and Assistant District Attorney Davie Waymire. *See* Doc. 42.

[2] These facts are based on the Amended Complaint (Doc. 25) and the Joint Status Report (Doc. 31).

attempting to coerce Bloomfield into saying that Rowley and Lee helped Bloomfield and Skaggs commit the murders.  Defendants also allegedly promised to drop the death penalty and other concessions if Bloomfield helped Defendants in a pending civil lawsuit filed by Rowley against them.  As a result of the false confessions, Plaintiff and Michael Lee were wrongfully detained for more than six months.  Even after Plaintiff and Lee were released, Defendants Schultz and Brandenburg (the latter has been dismissed from the case) held a news conference in which they stated that Plaintiff was involved in the crimes, thereby defaming Plaintiff and making his desire for post-detention employment nearly impossible.

Plaintiff asserts that Defendants used psychological tactics to extract a false confession from him and that Defendants wrongfully relied upon his coerced confession in spite of hard evidence to the contrary.

Plaintiff asserts the following claims in the Amended Complaint (Doc. 25):

- Count I: Fourth Amendment Unreasonable Seizure and Detention against Defendant City and Defendant Detectives;

- Count II:  Fourteenth Amendment Malicious Prosecution and Denial of Due Process against Defendant City and Defendant Detectives;

- Count III:  Fourteenth Amendment § 1983 Deprivation of Due Process by Defamation against Defendants Brandenburg and Waymire;

- Count IV:  State Law Torts brought under the New Mexico Tort Claims Act,, NMSA 1978, § 41-4-12 ("Tort Claims Act") for false arrest, false imprisonment and malicious prosecution against Defendant City and Defendant Detectives;

- Count V:  State Law Torts brought under the Tort Claims Act for defamation against Defendant City and Defendant Detectives;
- Count VIII:  Equitable relief, including relief in the form of ordering Defendants to issue a public retraction of the false statements and/or confirm Plaintiff's exoneration in writing.[3]

---

[3]  Both the Complaint and the Amended Complaint do not contain any Counts VI and VII, and skip directly from Count V to Count VIII.  Also, the Court notes that  with the dismissal of Defendants Brandenburg and Waymire, Count III is dismissed.

Plaintiff seeks an Order from the Court that Plaintiff has shown good cause for any late disclosure of expert reports under Rule 26.   The motion attempts to preempt objections Defendants are expected to have regarding Plaintiff's late disclosure of Plaintiff's expert reports under the initial JSR.   The docket indicates that there have been several attempts to get discovery, particularly discovery concerning expert witnesses, underway in this case:

- Plaintiff identified experts Dr. Ofshe, Dr. Spence and Dr. Martin (Plaintiff's treating physician) in the Joint Status Report ("JSR)" which was filed on December 5, 2011 (Doc. 31).

- JSR deadlines for expert reports was January 10, 2012 for Plaintiff's experts, and March 2, 2012 for defense experts.  *See* Doc. 31 at 32.   The Court adopted the JSR (Doc. 33) , but entered a Scheduling Order with different deadlines for expert reports:  March 2, 2012 for Plaintiff's experts, and April 2, 2012 for Defendants' experts.   Doc. 34.

- Defendants did not participate in negotiations for the JSR or execute the document before it was filed, as evidenced by the blank portions in the report.

- On July 1, 2012, Plaintiff filed a motion to reopen discovery (Doc. 43).   Defendants did not respond to that motion, which was granted by United States Magistrate Judge Daniel W. Schneider, extending deadlines for interrogatories and depositions. Doc. 45.   However, Judge Schneider did not extend the deadlines for expert reports to July 31, 2012 as requested by Plaintiffs.  Instead, he reserved ruling on that issue.  *See*  Doc. 45 at 5.

- On September 7, 2012, Plaintiff delivered over 16,000 pages of discovery to Defendants.  Doc. 47.

- On September 18, 2012, parties agreed to extend the discovery deadline to December 15, 2012 and requested that the Court vacate the January 2013 schedule trial in this case.   Doc. 48.   The Court granted the request to vacate the trial and extend discovery deadlines, but reserved ruling on the issue of expert witness disclosures.  Doc. 53

- Also on September 18, 2012, Plaintiff filed a Notice of Expert Witness as to Dr. Cave, Dr. Spence and Dr. Ofshe (Docs. 49, 50 & 51).

**DISCUSSION**

Plaintiff has filed this motion with the awareness that Defendants will object to the late disclosure of expert reports under the original JSR. Plaintiff advises the Court that Defendants did not participate in the preparation and execution of the JSR and have yet to request the production of any documents, or interview or depose any of the dozens of witnesses and expert witnesses disclosed by Plaintiff. This statement is borne out by the docket entries. Plaintiff also points out that the expert reports in question have been in Defendants' custody because they were prepared by the City Defendants during the capital trial. For example, Dr. Spence's DNA reports were disclosed by Defendants to Plaintiff during that trial, and the City's own DNA expert testified at a *Daubert*[4] hearing in the criminal case. Dr. Ofshe's report was also made available during the capital case. He testified for over two hours at the *Daubert* hearing regarding Defendants' interrogations methods. While Dr. Cave was not identified as an expert in the JSR, she was disclosed as a substitute expert for the treating psychologist. Plaintiff contends that she can provide a better forensic opinion because she is not treating Plaintiff. Plaintiff acknowledges the initial deadlines in the JSR, but admits that he did not account for delays resulting from, to some degree, the volumes of pages of discovery involved in this case.

Defendants respond by objecting to Plaintiff's expert notices as being untimely and insufficient under Rule 26(a)(2)(B). They also contend that Plaintiff's motion in limine is inappropriate for discovery uses and is usually directed at trial testimony. Finally, Defendants contend that instead of filing this motion, Plaintiff should have sought to modify previously ordered deadlines in the JSR relating to disclosure of expert witnesses. None of these responses give the Court any reason to deny Plaintiff's motion.

A.      Appropriateness of "Motion in Limine" and Plaintiff's Failure to Request Extension

---

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

The Court agrees with Defendants, and Plaintiff concedes, that this motion probably should have been brought as a motion to extend deadlines. The Court finds this to be a minor, almost insignificant deficiency. In addition, the Court observes that one reason Plaintiff might have chosen to describe the pleading as a "motion in limine" is the fact that previous attempts to extend the deadline for experts have not been successful. Defendants' representation that Plaintiff has never filed a motion to extend the expert disclosure deadlines set in the JSR is patently false. Plaintiff *did* request such an extension on July 31, 2012 in Doc. 43. However, in that nine-page motion, Plaintiff quotes Ms. Kathryn Levy, counsel for the City of Albuquerque, as stating that she "cannot consent to any extension on the expert deadlines so cannot agree to your proposed motion and order. . . ." Doc. 43 at 5. For this reason, Judge Schneider reserved ruling on the extension of deadlines dealing with expert witness disclosures. Doc. 45. Plaintiff would have attempted a request for another extension on September 18, 2012, when the parties stipulated to continue the trial and reopen discovery deadlines. Doc. 48. However, Plaintiff could not ask for an extension because Defendants would not agree to one, explaining the situation as follows:

> Plaintiff is filing a separate motion dealing with the issue of expert witnesses including disclosure of reports and the like. Defendant intends to respond in opposition to that separate motion.

Doc. 48 at 2.   The Court again "reserved ruling" on the issue of expert witness disclosures, probably because Ms. Levy would not consent to any extension on the expert witness deadlines. Thus, the more accurate reason for Plaintiff's "failure" to request an extension on expert witness deadlines is due to opposing counsel's refusal to agree to such an extension.

B.     Defendants' Objections to Plaintiff's Experts

Defendants challenge the reports of Dr. Cave, Dr. Spence and Dr. Ofshe as being untimely and insufficient, but it is not clear if Defendants have *Daubert* challenges to these experts.

Defendants object to Dr. Cave because Dr. Cave was disclosed as an expert months before she interviewed or examined Plaintiff or administered any tests and because the 83 cases listed as cases in which Dr. Cave testified do not give any detail. Plaintiff states that he can provide detail if necessary, since Dr. Cave is under contract as a court-appointed expert with the First Judicial District Court of the State of New Mexico.  Plaintiff explains that Dr. Cave could not render an opinion until she examined Plaintiff, and that Plaintiff could not afford to travel from Minnesota to see Dr. Cave until the settlement conference.

Defendants object to disclosures regarding Dr. Spence because there is no report from him.  Plaintiff notes that Dr. Spence was a former prosecution expert on DNA and cannot imagine Defendants challenging the opinion of this expert because he testified at the criminal trial that the DNA belonged to Bloomfield to the exclusion of all others.

Defendants also object to Dr. Ofshe because there is no expert report disclosed – just a statement that Dr. Ofshe will testify "consistent with his testimony at the *Daubert* hearing in the criminal case."  Defendants note that the City Defendants were not part of the criminal case, and it still must be determined if the science underlying the report is reliable.  Plaintiff expects Dr. Ofshe's testimony to be identical to his trial testimony.

C.     Deadlines Regarding Expert Witness Disclosures Shall Be Extended

There is no reason to deny Plaintiff's request for additional time on deadlines regarding expert witness disclosures. Defendants object to the untimeliness and insufficiency of Plaintiff's expert reports, yet they have filed no formal pleading in that respect, nor any *Daubert* motion challenging these reports. In fact, the Court finds that Defendants' refusal to agree to an extension is somewhat brazen, given the frequency with which the City of Albuquerque has failed to respond to motions or missed a deadline for filing an answer. Two examples come to mind.[5] One occurred in this case: the Court granted Defendants' request to set aside Plaintiff's Notice of Briefing Complete, where Defendants had failed to respond to Plaintiff's motion in limine concerning a defense expert. *See* Doc. 58. As previously noted, Defendants did not participate in executing their portion of the JSR, nor did they respond to Plaintiff's motion to reopen discovery.

In another case, the Clerk of Court entered a Default Judgment against City of Albuquerque defendants, for failure to file an answer. *See Slook v. Albuquerque Police Dept. et al.,* 07-cv-46 WJ-RHS, Doc. 50. Those defendants moved to set aside the entry of default, and following a hearing, the Court denied plaintiff's motion for default judgment and setting aside the entry of default. The Court is reasonably certain that further consideration would recall other instances where the Court has given the City of Albuquerque considerable leeway by allowing extensions of time after the City failed to respond to a motion or file an answer.

Accordingly, the Court finds that discovery deadlines should be extended where necessary so that, once and for all, both parties are afforded a reasonable time to cure

---

[5] The two cases cited are cases where I was the presiding judge. I am very confident that if I searched the trial dockets of other judges who presided over cases in which the City of Albuquerque, or some of its employees, was a party, there would be numerous other examples of missed deadlines.

purported deficiencies—whether it is Plaintiff's untimeliness with regard to expert witness reports, or Defendants' failure to participate in discovery.  This finding necessarily rejects Defendants' objections to untimeliness concerning Plaintiff's expert witness reports, and further objections of this kind will be overruled by the Court pending new deadlines being set.

The allegations in this case are sufficiently egregious to require that both parties be allowed a full opportunity to develop discovery.  At the end of such deadlines, parties may file the necessary motions challenging those experts and expert reports.   To this end, the Court refers this case to the Magistrate Judge to set appropriate case management deadlines which shall include extended deadlines for identification of experts and expert reports, as well as deadlines for *Daubert* motions.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion in Limine Regarding Expert Witnesses (**Doc. 52**) is hereby GRANTED in that Plaintiff's request for an extension of deadlines regarding expert witnesses and expert witness reports shall be allowed;

**IT IS FURTHER ORDERED** that this case is referred to the Magistrate Judge to set case management deadlines as necessary, and as described above in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE