IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRAVIS RYAN ROWLEY,

      Plaintiff,

v.                                       No. 10CV1182  WJ/GBW

APD DETECTIVE KEVIN MORANT,
APD DETECTIVE MICHAEL FOX,
APD DETECTIVE FRANK FLORES,
CHIEF OF POLICE RAY SCHULTZ,
The CITY OF ALBUQUERQUE, and
JASON MORALES,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING INDIVIDUAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

**THIS MATTER** comes before the Court upon Individual Defendants' Motion for

Summary Judgment on Qualified Immunity as to Plaintiff's Constitutional Claims and Individual

Defendants' and City's Motion for Summary Judgment on State Tort Claims, filed December 2,

2013 (**Doc. No. 122**). Having considered the parties' briefs[1] and the applicable law, the Court

finds that Defendant's motion is well-taken and, therefore, is GRANTED subject to the condition

that the Court may reconsider this decision as herein explained.

**Factual Background**

Plaintiff Travis Rowley brings this suit against members of the Albuquerque Police

Department ("APD") for actions related to Plaintiff's arrest for the murders of Tak and Pung Yi.

---

[1]  Plaintiff filed his Response to Defendant's Motion on March 18, 2014 (**Doc. No. 147**), but Plaintiff subsequently
filed an Amended Response on April 6, 2014 (**Doc. No. 152**).  Parties specifically stated to the Court that Plaintiff's
Amended Response would govern and that Defendants would only reply to Plaintiff's Amended Response.  See
(**Doc. No. 167**), Stipulation, filed April 29, 2014.  Accordingly, the Court did not consider Plaintiff's original
Response (**Doc. No. 147**), only Plaintiff's Amended Response (**Doc. No. 152**).

Tak and Pung Yi, an elderly married couple, were murdered in their Northeast Albuquerque home in December of 2007.   Plaintiff and his co-worker, Michael Lee, had been selling magazines door to door in the Yi's neighborhood in the days prior to the murders. APD detectives investigating the murders interviewed Plaintiff and Lee several times in December of 2007.  During one of the interviews, Plaintiff confessed to being inside the Yi's home during the murders.   Plaintiff then implicated Lee in the murders.   Plaintiff subsequently confessed to striking Tak Yi on the head.  Plaintiff also recounted various details about the murder scene that APD detectives believed only someone who had been present during the murders would know. However, a number of Plaintiff's statements about the crime scene did not comport with what detectives observed at the scene.

The Second Judicial District Attorney's Office charged Plaintiff with the murders, and on December, 21, 2007, a grand jury indicted him.   After Plaintiff's indictment and subsequent arrest, additional information regarding the murders came to light.   There was DNA evidence at the crime scene that in mid-2008 was matched to serial killer Clifford Bloomfield.   Bloomfield later confessed to murdering the Yi's.   Even with the DNA evidence linking Bloomfield to the murders, the District Attorneys' Office proceeded with the charges against Plaintiff until March 2009 when it ultimately dropped the charges against Plaintiff and Lee and the pair was released from jail.

**Procedural Background**

Defendants filed a Motion for Summary Judgment Based Upon Qualified Immunity **(Doc. No. 122)**.  The Motion addresses the majority of the claims raised in Plaintiff's Complaint and addressed a number of factual and legal issues.  Given that Plaintiff's Complaint is largely based upon his interrogation by APD detectives, Defendants' Motion focused extensively on the

interrogation and repeatedly referenced video of the interrogations.   After the Motion for Summary Judgment was fully briefed, Plaintiff filed a Motion to Strike Reply or in the Alternative Motion for Leave to File Supplemental Pleading (**Doc. No. 178**) ("Motion to Strike"), asking the Court to strike Defendants' Reply in Support of the Motion for Summary Judgment or to allow Plaintiff to Supplement his Response.   Plaintiff alleged, *inter alia*, that relief was needed in order to remedy the fact that Defendant raised legal and factual arguments for the first time in their Reply.   Notably, Plaintiff's Motion to Strike made no reference to newly discovered evidence as a basis for allowing Plaintiff to supplement his Response.   While the Motion to Strike was pending, Plaintiff, without the required leave of Court, filed a Supplement to his Response to the Motion for Summary Judgment.   See (**Doc. No. 180**).   The Court promptly struck this pleading noting that Plaintiff failed to wait until the Court gave its permission for Plaintiff to file a supplement pursuant to Plaintiff's Motion.   See (**Doc. No. 181**), Order Striking Plaintiff's Supplement.   In spite of the fact that the Court struck Plaintiff's Supplement, in his Reply in Support of his Motion to Strike, Plaintiff repeatedly referenced the supplement and the exhibits attached thereto.   See (**Doc. No. 182**), Plaintiff's Reply.   Plaintiff's Reply for the first time[2] and without affording Defendants an adequate opportunity to respond, made the allegation that the videos of APD's interrogation of Plaintiff were doctored in such a way to mislead the viewer about what took place during the interrogation.

The Court was concerned about these new allegations.   However, this issue was not properly before the Court because Plaintiff, and in particular his counsel, raised this issue for the first time in his Reply brief.    Further, while the Court recognized this as a serious issue, Plaintiff's reference to doctored videos did not provide sufficient detail for the Court to fully

---

[2]   The allegation about the fabricated videos was raised in Plaintiff's Supplement.  However, because that pleading was struck from the record, for all intents and purposes it was though it had never been raised.

understand the issue.  Moreover, Plaintiff's allegations about tampering with the video were supported solely by his investigator's observations.  Plaintiff's investigator does not purport to be an information systems expert such that he would be qualified to give expert opinion about whether the videos were manipulated through use of technology.  Finally, Plaintiff's reference to the fabricated videos did not make it immediately apparent why this issue was just now being raised given that the videos have been a central part of this case since the Complaint was filed in 2010.  After hearing from both parties on the issue at a hearing conducted on July 1, 2014, the Court determined that at this point Plaintiff had failed to demonstrate that this new evidence should be considered.  The Court also indicated that based upon the record as it currently stands, considering just Motion for Summary Judgment, Response, and Reply, Defendants had demonstrated that they were entitled to qualified immunity.  Accordingly, the Court announced its intention to issue an Order reflecting as much.  However, the Court noted that once it issued its Order Granting Defendants' Motion for Summary Judgment, Plaintiff would have ninety (90) days to file a Motion to Reconsider setting forth in a procedurally proper manner his allegations regarding the videos of the interrogation and why the Court should reconsider its decision on qualified immunity.  The Court cautioned Plaintiff to ensure that his Motion to Reconsider had all of "its ducks in a row" so to speak and further informed Plaintiff that his allegations must be supported by a person qualified to speak on such matters.  This is why the Court is giving Plaintiff and his counsel Plaintiff ninety days to prepare and file a motion to reconsider. Accordingly, the Court will set forth its reasons for granting Defendants' Motion for Summary Judgment, keeping in mind that Plaintiff may be able to introduce additional evidence that may change the Court's treatment of the issue.

4

**Undisputed Material Facts**

Rather than address each of Defendant's "Undisputed Material Facts" in an orderly fashion as required by the local rules of this Court, Plaintiff's counsel addressed Defendants' facts out of order and in several places in his Response brief. See D.N.M. LR CIV 56.1(b) ("A party opposing the motion must file a written memorandum containing a short, concise statement of the reasons in opposition to the motion with authorities. The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed."). Further, Plaintiff's counsel failed to letter each of his additional facts as required by the local rules. Id. ("The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies."). The Court notes it undertook a painstaking process of comparing Plaintiff's "facts" with Defendants' "facts", a process that Plaintiff was required to complete under the local rules of this Court. Where Plaintiff's proffered facts did not conflict with Defendants' facts, the Court deemed those facts undisputed. The Court will address the facts where relevant to its analysis instead of listing all of the facts in one section.

**Discussion**

## I.      Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. Pro. 56(c); Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Id.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings.  Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  Id. at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  Id. at 252.

Defendants raise the defense of qualified immunity.  "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff. . .." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). Accordingly, the plaintiff must meet the following two-part burden:

> the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered . . ..

Saucier v. Katz, 533 U.S. 194, 200 (2001).

"If the plaintiff fails to meet either part of this "heavy two-part burden," the defendant's qualified immunity defense prevails. Albright v. Rodriguez, 51 F.3d 1531, 1534-1535 (10th Cir. 1995).

**II.     Count I**

*A.     Unreasonable seizure*

Plaintiff's Complaint alleges that Defendants "unreasonably seized him."  Although the Complaint is less than clear, the Court interprets this language in the Complaint as alleging that the arrest warrant prepared by Defendants either: 1) did not establish probable cause; or 2) contained false or misleading statements.

6

1.     Probable Cause

Plaintiff has two basic arguments regarding probable cause, 1) that the only evidence supporting probable cause for Plaintiff's arrest was Plaintiff's confession and because his confession was coerced, Defendant officers should have known not to rely on it; and 2) even if the Court considers Plaintiff's confession, Plaintiff's confession varied so greatly from the physical evidence at the crime scene, that a reasonable police officer would not have believed it established probable cause.

### a.     Plaintiff is Collaterally Estopped From Arguing that his Confession was Coerced

Defendants assert that Plaintiff is barred from arguing that his confession was coerced or otherwise obtained in violation of his civil rights by the fact that a state court judge in the criminal case against Plaintiff denied his Motion to Suppress his confession.  However, before collateral estoppel is applied to preclude litigation of an issue, the moving party must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation .  Shovelin v. Cent. New Mexico Elec. Co-op., Inc., 1993-NMSC-015, 115 N.M. 293, 297, 850 P.2d 996, 1000.  In civil cases, New Mexico has "eliminated the traditional rule that the parties must be the same or in privity if the doctrine of collateral estoppel is to apply." State v. Arevalo, 2002-NMCA-062, 132 N.M. 306, 309, 47 P.3d 866, 869 (citation omitted).  It is sufficient that "[t]he party against whom [collateral estoppel] is invoked must have had a full and fair opportunity to litigate the issue or issues." Id.  Plaintiff does not dispute that he was a party to the criminal matter, or that the instant suit is a different cause of action than the criminal case.  Instead, Plaintiff focuses on whether he had a full and fair

opportunity to litigate this issue in the criminal case and whether the state court's denial of the motion to suppress is a final judgment.

In Allen v. McCurry, 449 U.S. 90, 104 (1980), the Supreme Court held that collateral estoppel may preclude a § 1983 plaintiff from relitigating in federal court the issue of unreasonable search and seizure when that issue had been determined adversely to the plaintiff on a motion to suppress during the state court criminal proceeding.  This doctrine was more fully discussed by the Tenth Circuit in Searing v. Hayes, 684 F.2d 694 (10th Cir. 1982).  In Searing, the plaintiffs were charged in the state court with the felonious possession of marijuana with the intent to sell. Id.  The plaintiffs filed a motion to suppress the evidence seized asserting that the search warrant was obtained by a false affidavit knowingly or recklessly made by a defendant officer.  Id.  The validity of the search warrant was upheld.  Id., 696.  Both plaintiffs were convicted and neither appealed the denial of the motion to suppress.  Id.

After their convictions, plaintiffs filed a Section 1983 lawsuit alleging that certain police officers violated their Fourth Amendment rights when the officers executed a search warrant on Plaintiffs' residence.  Id., at 695.  The defendant officers moved for summary judgment alleging that Plaintiffs were collaterally estopped from arguing that the search warrant was invalid by the state court's ruling in the criminal case. Id., at 696.  The Tenth Circuit found that the state court motion to suppress and the civil suit raised the same legal issue, whether the search warrant was valid.  Id.  Further, the Court found that Plaintiffs had a full and fair opportunity to litigate the issue.  Id.  Ultimately, the Court concluded that Plaintiffs were barred from relitigating the validity of the search warrant.  Id. 697 ("The state court found that the affiant was truthful and that the search warrant was legal, and the plaintiffs are now bound by that determination in federal court.").

Although he acknowledges the general rule exposed in <u>Searing</u>, Plaintiff cites to another Tenth Circuit decision, <u>Dixon v. Richer</u>, 922 F.2d 1456 (10th Cir. 1991), in which the Tenth Circuit denied rejected defendant officer's argument that Plaintiff was barred by collateral estoppel from litigating of the issue of probable cause for their arrest by the state court's denial of the motion to suppress.  The Court stated that because the plaintiffs were acquitted of the underlying criminal charges, they did not have an opportunity to appeal the state court's denial of their motion to suppress and thus, did not have a full and fair opportunity to litigate the issue in state court.  <u>Id.</u>, at 1459.  However, the first basis that the Tenth Circuit articulated for denial of collateral estoppel was that the state court's determination of probable cause had no bearing on the issue of excessive force.  <u>Id.</u>  Thus, the Tenth Circuit's statement regarding the ability to appeal is arguably dicta.

The same year that <u>Dixon</u> came down, the Tenth Circuit issued another opinion regarding essentially the same question.  In <u>Hubbert v. City of Moore, Okl.</u>, 923 F.2d 769 (10th Cir. 1991), the plaintiff brought a civil lawsuit arising out of events connected to her arrest for assault with a dangerous weapon.  <u>Id.</u>, at 771.  After the plaintiff was acquitted of all charges by a jury, she brought a civil suit against the arresting officers alleging that they had arrested her without probable cause.  <u>Id.</u>  The district court dismissed her Fourth Amendment claim based upon the defendants' argument that the state criminal court judge's determination that the plaintiff's arrest was supported by probable cause.  <u>Id.</u>  The plaintiff appealed the ruling arguing that collateral estoppel should not apply because she had no ability to appeal the adjudication of probable cause as the case had ended in an acquittal.  <u>Id.</u>, at 772.  After reviewing the law of the forum state, the Tenth Circuit affirmed the dismissal of Plaintiff's Complaint on collateral estoppel grounds.  The Court stated, "[w]e hold no genuine issue of material fact remains because probable cause was

fully and fairly litigated in the prior criminal proceeding and cannot be relitigated in this civil action. We conclude [Defendant Officers] had probable cause to make the arrest and thus are entitled to qualified immunity from liability in the [plaintiffs'] section 1983 action." Hubbert 923 F.2d at 773.

In Bell v. Dillard Dep't Stores, Inc., 85 F.3d 1451 (10th Cir. 1996), the Tenth Circuit noted that Hubbert called into question whether a right to appeal is always a necessary element for collateral estoppel. Id., at 1457 (Nevertheless, as [] the district court [] correctly noted, a decision of this court [] suggest[s] that the availability of an appeal to the losing party is not always required in order to apply the doctrine of issue preclusion.") (citing Hubbert). Although Dixon, Hubbert, and Bell are interesting cases and the Court takes note of them for their persuasive value, the preclusive effect of a state court judgment is ultimately defined by state law. Hubbert, 923 F.2d at 772-73 (the preclusive effect of a prior state court judgment is defined by that state's law). None of these three cases involved an interpretation of the doctrine of collateral estoppel under New Mexico law.

Plaintiff has not cited a New Mexico case that holds the ability to appeal a decision is a requirement for finality under the collateral estoppel doctrine. To the contrary, in the case In re Forfeiture of Fourteen Thousand Six Hundred Thirty Nine Dollars ($14,639) in U.S. Currency in Various Denominations & Two (2) Digital Pagers, 1995-NMCA-088, 120 N.M. 408, 902 P.2d 563, the New Mexico Court of Appeals was faced with the question of whether the State was barred from relitigating the constitutionality of a search in a civil forfeiture proceeding by a previous decision in a criminal case granting a motion to suppress. After the criminal court judge granted the motion to suppress, the State chose not to appeal the decision although it could have, 410, 565; see also NMSA 1978. § 39-3-3  B)(2) (noting that the state can appeal "within

ten days from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property[].").  The Court of Appeals stated, "we have no hesitation in giving collateral estoppel effect in a forfeiture proceeding to a prior decision on a motion to suppress in a criminal proceeding."  Id., 120 N.M. at 414-15, 902 P.2d at 569-70.

However, even if ability to appeal were a requirement, Plaintiff here had the opportunity to appeal the denial of the motion to suppress and did not so.  Plaintiff claims that he could have only appealed the denial of the motion to suppress after a final guilty verdict.  However, this claim does not comport with New Mexico case law.  In State v. Haidle, 2012-NMSC-033, 285 P.3d 668, the New Mexico Supreme Court granted a defendant's application for interlocutory appeal to review the district court's partial denial of his suppression motion. The New Mexico Supreme Court noted that interlocutory review of suppression orders are appropriate under NMSA 1978, § 39-3-3(A) in cases in which a sentence of life imprisonment or death could be imposed.  Id. at ¶ 7; see also State v. Riordan, 2009 NMSC 022, ¶ 5, 146 N.M. 281, 209 P.3d 773 (in a case in which a defendant applied for an interlocutory appeal of the trial court's order denying his motion for recusal, the Supreme Court was vested by law with jurisdiction over the interlocutory appeal pursuant to § 39-3-3(A) because the case involved a sentence of life imprisonment or death).  Here, Plaintiff was indicted for crimes for which he would have received life in prison.

Plaintiff's Motion to Suppress was denied on February 12, 2009.  See **(Doc. No. 122-21)** Exhibit U to Defendant's Motion.  The District Attorney's Office issued a nolle prosequi on March 11, 2009.  **(Doc. No. 122-15)**, Deposition of David Waymire, p. 60, ll. 4, Exhibit O to Defendant's Motion.   Therefore, the statutory time period in which to file an interlocutory appeal passed before the charges against Plaintiff were dropped.  See NMSA 1978 1978, § 39-3-

11

3(A)(3) (providing a ten (10) day time period in which to file an interlocutory appeal.)[3]. Therefore, Plaintiff had the opportunity to appeal the order and did not exercise it. A plaintiff who fails to exercise his right to appeal is in the same position for preclusion purposes as a party who has appealed and lost. State ex rel. Sofeico v. Heffernan, 41 N.M. 219, 234, 67 P.2d 240, 249 (1936) (stating that a judgment that is not appealed becomes "res judicata as to any and all future litigation between the same parties" involving the question resolved); In re Estate of Duran, 2007-NMCA-068, 141 N.M. 793, 798, 161 P.3d 290, 295 (discussing collateral estoppel and appeals and stating "[l]itigants who do not appeal from an adverse decision are stuck with it.") (citation omitted). The Court recognizes that Plaintiff could have also appealed after judgment was entered in the criminal case, but the more salient consideration is that Plaintiff had the ability to immediately appeal, thus he had the ability to fairly and fully litigate this matter in state court.

Therefore, the Court finds that under New Mexico law, in a criminal case where the Plaintiff was facing the prospect of life in prison if convicted on the charges of murdering Tak and Pung Yi, the state district judge's ruling that Plaintiff's confession was not obtained in violation of his constitutional rights precludes Plaintiff from relitigating that issue in the instant lawsuit. Accordingly, Plaintiff's constitutional claims based upon the allegedly coerced confession are dismissed.

### b. Plaintiff's confession established probable cause

Alternatively, Plaintiff argues that it was clear that he was not involved in the murders,

---

[3] In his Motion to Strike Defendants' Reply (Doc. No. 178), Plaintiff points out that Section 39-3-3(A)(3) requires the district court to certify the question for appeal. Plaintiff notes that the minute order in the criminal case was not certified for interlocutory appeal and that therefore, Plaintiff could not have appealed. However, Plaintiff ignores that he never requested that the state court certify the order denying the motion to suppress for appeal. Thus, ultimately Plaintiff is the one who prevented this matter from being appealed by not even asking the state court to certify it. Plaintiff's assertion that he does not believe the state court would have granted an interlocutory order does not change this fact.

because during his confession he made a number of statements that did not comport with the physical evidence at the scene.  Plaintiff alleges that he was wrong about the following facts:

1) Although Plaintiff correctly stated the location of Mr. Yi's wallet, Plaintiff incorrectly stated that Mrs. Yi's wallet was left on a counter table even though Mrs. Yi's wallet was not located.  <u>See</u> **(Doc. No. 152)**, p. 10 (citing to various exhibits).

2) Plaintiff claims that he stated the bed was made, not disheveled as the investigators observe red.  However, Plaintiff's actual statement was "the bed was made and it like maybe [Lee] bounced off of it… for a split second."  It is unclear precisely what Plaintiff meant by the bed looked like someone bounced off it, however, it would not necessarily be inconsistent with a description of a disheveled bed. <u>See</u> **(Doc. No. 152)**, p. 10 (citing to various exhibits).

3) Plaintiff was unsure about whether Mrs. Yi had anything placed on her body.  He wavered about this detail, but he ultimately stated that a black bag had been placed over her head.  However, Mrs. Yi was actually found with a white bag over her head.  <u>See</u> **(Doc. No. 152)**, pp. 10-11 (citing to various exhibits).

4) Plaintiff was also initially unsure about what Mrs. Yi was wearing.  Plaintiff eventually stated that she was wearing a white night gown over blue jeans, but she was found wearing a pink bathrobe and she was nude underneath. <u>See</u> **(Doc. No. 152)**, pp. 12-11 (citing to various exhibits).

5) Plaintiff was not sure about whether Mr. Yi had work gloves, although apparently gloves were located at the scene.  <u>See</u> **(Doc. No. 152)**, p. 13 (citing to various exhibits).

6) Plaintiff described a sliding glass door into the back bedroom of the house.  There was a sliding glass door near the rear of the home.  However, the Yi's home did not have a bedroom towards the back of the house.  <u>See</u> **(Doc. No. 152)**, p. 13 (citing to various exhibits).

7) Plaintiff stated that he only struck Mr. Yi once in the back of the head.  Although Mr. Yi was struck in the back of the head, he also had various other injuries.  Additionally, Plaintiff said he checked both victims' pulses after the attack and found none even though the medical investigator later concluded that the victims survived for hours after the attack.  <u>See</u> (**Doc. No. 152**), pp. 14-15 (citing to various exhibits).

8) Plaintiff claimed that Lee sexually penetrated Mrs. Yi with a Buddha figurine although there was apparently no evidence that Mrs. Yi had been sexually assaulted and the Buddha figurine was not related to the crime.  <u>See</u> (**Doc. No. 152**), p. 15 (citing to various exhibits).

9) Plaintiff claimed that Mrs. Yi opened the front door, but the front door was found locked.  Further, criminalistics later determined that the most likely point of entry was the back door.  <u>See</u> (**Doc. No. 152**), pp. 15-16 (citing to various exhibits).

Plaintiff also focuses on the time of the Yi's death.  Plaintiff argues that the time of death negates probable cause for two (2) reasons: 1) he had an alibi for the actual time of death; and 2) he confessed to killing the Yi's on December 4th, when they were actually murdered on December 3rd.  Plaintiff's arguments are unavailing.  Plaintiff's basis for his assertion that the Yi's were murdered on December 3rd comes from the autopsy report issued by the Office of the Medical Investigator ("OMI") on December 13, 2007.  However, Plaintiff was arrested on December 8, 2007.  Accordingly, Detective Morant would not have had the benefit of the OMI's findings at the time the arrest warrant was drafted.  The Yi's were last seen alive on December 3rd and their bodies were not discovered until December 4th.  It was reasonable for Detective Morant to conclude that they were murdered on either the 3rd or the 4th.  The fact that Detective Morant was ultimately wrong about when the murders occurred does not vitiate the probable cause for Plaintiff's arrest.  <u>Sherouse v. Ratchner</u>, 573 F.3d 1055, 1059 (10th Cir. 2009) (an

14

officer's reasonable but mistaken understanding of the *facts* justifying a search or seizure does not negate the legitimacy of a probable cause determination) (emphasis in original) (citation omitted).  Thus Plaintiff's argument that Detective Morant should have known Plaintiff was not involved in the murders because Plaintiff incorrectly stated the time of death in his confession fails.  Plaintiff also alleges that the detectives should have been able to determine time of death immediately from the blood pooling at the scene, but the Court cannot charge the detectives on the scene with making a scientific determination of time of death in a matter of days when it took the OMI almost two weeks to make a finding of time of death, especially considering that detectives were faced with a time frame of only a few hours.

Likewise even accepting Plaintiffs' allegations that his co-workers supported an alibi until 8:00 p.m. on Monday, December 3, 2007, the co-workers' statements do not negate probable cause because it was reasonable for the officers to believe that the murders could have occurred after 8:00 p.m. on the 3rd, sometime on the 4th.  There were business records showing Plaintiff's location on the third, including "green cards" which detail Plaintiff and Lee's work activity.  There are several reasons that the green cards do not create an "airtight" alibi that would negate probable cause.  First, the receipts were hand-written by Plaintiff or Michael Lee; it would entirely reasonable for an officer to believe that these were fabricated.  See  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1321-22 (10th Cir. 2002) ("But the arresting officer has no obligation to believe the suspect, *see Romero v. Fay,* 45 F.3d 1472, 1474 (10th Cir.1995) (officer lawfully kept suspect in custody despite suspect's protestations of innocence), and failure to inquire does not void the officer's probable cause, *see id.* at 1477–78 (once officer had **\*1322** probable cause to arrest, his failure to investigate further did not negate probable cause finding, absent showing that initial determination was itself unreasonable); *See generally* Wayne R.

15

LaFave et al., 2 Search and Seizure § 3.2(d) at 47–49 (2d ed.1996).”); see also Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998)( While officers may weigh the credibility of witnesses in making a probable cause determination, they may not ignore *available and undisputed* facts.) (emphasis in original).   Second, the receipts only account for Plaintiff’s whereabouts from 12:30 p.m. to 8:00 p.m. on December 3, 2007, and as previously discussed prior to his arrest it was reasonable for the officers to believe that the murders had taken place on December 4, 2007.   Accordingly, Plaintiff has not demonstrated that he had an alibi for the murders such that a reasonable officer would have known they did not have probable cause.

The Court does not find that Plaintiff’s confession is inconsistent with the evidence known to the detectives at time of Plaintiff’s arrest on all of the details listed by Plaintiff.   A number of the details are arguable consistent with the crime scene, i.e. the bed looking disheveled as opposed to looking like “someone had bounced off it.”   Moreover, even accepting that Plaintiff was “wrong” about certain details, on balance, the Court finds it was reasonable for the Defendant Officers to believe that there was probable cause to believe that Plaintiff was involved in the murders.   Plaintiff was correct about a number of details, he was working in the area of the murders, and most importantly, he actually confessed to striking Mr. Yi.   Further some of the facts about the murders, for example that the Yi’s survived for hours after the attack, were not available to the officers at the time of the interrogation, thus they would not have known that Plaintiff’s statements were inconsistent with the evidence.

“Probable cause exists if facts and circumstances within the arresting officer’s knowledge and of which he has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.”   Romero, 45 F.3d at 1476. Probable cause does not require a finding of guilt beyond a reasonable doubt, nor does it require

proof of a prima facie case.   See St. John v. Justman, 771 F.2d 445, 448 (10th Cir. 1985).

Rather, probable cause requires a "substantial probability that a crime has been committed and

that a specific individual committed a crime." Id.   Whether probable cause exists in light of the

factual record does not rest on proof beyond reasonable doubt, nor does it even require the

suspect's guilt to be "more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983);

see also United States v. Ludwig, 641 F.3d 1243, 1252 (10th Cir. 2011).   Probable cause for an

arrest warrant is established "by demonstrating a substantial probability that a crime has been

committed and that a specific individual committed the crime." Wolford v. Lasater, 78 F.3d 484,

489 (10th Cir. 1996).   Accordingly, the Court holds that Defendants had probable cause to arrest

Plaintiff when they drafted the arrest warrant.   Therefore, Defendant Officers are entitled to

qualified immunity on the Fourth Amendment illegal seizure claim set forth in Count I.

### 2.      False or misleading statements in arrest warrant

Plaintiff argues that Defendant Morant lied under oath when he wrote in the arrest

warrant affidavit that the murders took place on December fourth.   As discussed above, this was

a reasonable conclusion based upon the window of time when the Yi's were not seen or heard

from.   Accordingly, Defendant Morant is entitled to qualified immunity in this respect.

The second allegedly false statement was that Defendant Morant stated in the arrest

warrant that Plaintiff's supervisor placed Plaintiff and Lee in the area of Louisiana and Avenida

La Costa at the time of the incident.   Plaintiff has failed to controvert that his supervisor told

Detective Morant that he and Lee were in the area of the murders on December 3rd.   Plaintiff

notes that his supervisor later stated that he did not believe that Plaintiff was involved in the

murders, but he did not provide any testimony that directly contradicts the earlier statement.

Thus, Plaintiff has failed to demonstrate that Detective Morant made materially false statements

in his arrest warrant affidavit.  Accordingly, Detective Morant is entitled to qualified immunity on illegal seizure claim in Count I.

**B.     Defendants Are Entitled to Qualified Immunity on Plaintiff's Illegal Detention Claim**

The Court has already determined that there was probable cause to arrest Plaintiff pursuant to the arrest warrant executed on December 8, 2007.  As a separate claim, Plaintiff asserts that he was illegally detained after the probable cause that existed for the December 8th warrant was vitiated by after-acquired evidence.  Namely, Plaintiff claims that the time of death determination from the Office of the Medical Investigator demonstrated that he got the day of death wrong and that he had an alibi for the actual time of death.  The strongest evidence that Plaintiff relies on is that another man's, Clifton Bloomfield's, DNA was found at the crime scene, Bloomfield confessed, and he refused to implicate Plaintiff in the murders.  Defendants argue that they are entitled to summary judgment for two reasons: 1) once Plaintiff was arrested the decision to release him or drop the charges against him rested with the District Attorney's Office, not the police department or any individual officer; and 2) they did not have an affirmative duty to release Plaintiff once probable cause was vitiated.

As a preliminary matter, the Court finds persuasive Defendants' argument that once Plaintiff was arrested and booked into a detention facility, Plaintiff's continued detention was out of the police department's hands and the authority to release Plaintiff was left to the District Attorney's office or the Second Judicial District Judge assigned to Plaintiff's state court criminal case. However, even if Defendants had the ability to release Plaintiff once probable cause was vitiated, Plaintiff cannot show it was clearly established that Defendants had an affirmative duty to do so.

The recent Tenth Circuit case of <u>Panagoulakos v. Yazzie</u>, 741 F.3d 1126 (10th Cir. 2013)

is dispositive of Plaintiff's illegal detention claim.  In <u>Panagoulakos</u>, the plaintiff was arrested for violation of a protective order, because the arresting officer mistakenly believed that the protective order forbade the plaintiff from carrying a firearm.  <u>Id.</u>, at 1128.  Upon further review of the protective order, the arresting officer became and/or should have become aware that the protective order did not in fact prohibit plaintiff from carrying a firearm, thus the plaintiff had not committed any crime.  <u>Id.</u>   The plaintiff sued, alleging that he was wrongfully arrested and detained.  <u>Id.</u>  The district court granted officer partial summary judgment noting that although the initial arrest was supported by probable cause, the officer should have released him once probable cause was vitiated.  <u>Id.</u>, at 1129.  The defendants appealed to the Tenth Circuit and the Tenth Circuit reversed the district court's denial of qualified immunity as to the plaintiff's continued detention.

The Tenth Circuit noted that the plaintiff bore "the burden of showing that clearly established law imposed a duty on [the defendant officer] to release him. In other words, [the plaintiff] must show that, even though probable cause supported his initial arrest, clearly established law gave fair warning to [the defendant officer] that [once probable cause was vitiated] it was her constitutional duty to release him.  <u>Id.</u>, 1130.  After conducting a survey of the law surrounding this issue, the Tenth Circuit concluded, "[the defendant officer] is entitled to qualified immunity because no clearly established law imposed on her a duty to release [the plaintiff] following his lawful arrest after the traffic stop.  <u>Id.</u>, at 1131.

Count I of Plaintiff's First Amended Complaint alleges that Defendants continued to detain Plaintiff even after probable cause was "vitiated and eradicated".  The Court need not even reach the question of whether probable cause was later vitiated by Plaintiff's alibi evidence or discrepancies between Plaintiff's confession and the crime scene, because even assuming

"*arguendo* that clearly established law demonstrated that [Defendant Officers] no longer had probable cause to detain [Plaintiff] after [further evidence was received]" Defendants did not have a duty to release him once probable cause was vitiated. See id., 741 F.3d at 1130; see also Sanchez v. Labate, 13-2109, 2014 WL 1623050 (10th Cir. Apr. 24, 2014) ("Moreover, we recently held that clearly established law did not impose a constitutional duty on an officer to release an arrestee when post-arrest evidence negates the probable cause supporting the arrest.") (citing Panagoulakos).   It should be noted that even after Defendants directed the Court to Panagoulakos with a Notice of Supplemental Authority, Plaintiff never addressed the decision's effect on his claims; in spite of the fact that the Notice was filed before Plaintiff filed his Amended Response.   Defendant Officers are entitled to qualified immunity on Plaintiff's illegal detention claim set forth in Count I.

**III.     Count II**

**A.     Section 1983- Malicious Prosecution**

It is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under § 1983.   Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996).   Under New Mexico state tort law, lack of probable cause to initiate criminal proceedings is an essential element of the tort of malicious prosecution.   Id.   Because he Court has already determined that there was probable cause to arrest Plaintiff, his Section 1983 Malicious Prosecution claim against Defendant Officers fails.

**B.     Violation of Due Process- Extortion of Confession**

Although Plaintiff's Amended Complaint is not clear, to the extent that Count II was intended to assert a stand-alone due process claim for Plaintiff's allegedly extorted confession, that claim is dismissed for the reasons discussed above, namely that Plaintiff is collaterally

estopped from arguing that his confession was coerced.

### C.     Lies to Grand Jury

Count II also alleges that Detectives Morant and Fox lied to the Grand Jury about a number of details, including the following:

1. Mrs. Yi was dragged through the hall during the attack although criminalistics specifically found that she was not dragged.  Underline(Doc. No.152), pp. 19-21.

2.  Plaintiff was dropped at a gas station near the Yi's home on the day of the murder when surveillance video and receipts showed that he was dropped on Wednesday, after the murders took place.  Id.

3. Plaintiff placed himself in the area of the murders on Monday, December 3rd.  Plaintiff asserts he never said he was in the area on Monday, only on Tuesday.  Id.

4. The bed in the residence was made, when it was actually disheveled.  Id.

5. Plaintiff described a white plastic bag placed over Mrs. Yi's head even though Plaintiff stated the bag was black.  Id.

6. Plaintiff stomped on Mr. Yi's head, although Plaintiff never made that statement.  Id.

7. Plaintiff went through Mrs. Yi's purse although Plaintiff admitted to going through her wallet.  Id.

There are number of problems with Plaintiff's allegations about lies.  For a number of the "lies", Plaintiff fails to provide a citation to the grand jury transcript that captures the testimony, thus there is no evidence that Defendant Officers even testified to the alleged lie.  Second, Plaintiff takes a number of statements out of context.  For example, when Defendant Fox testified that Plaintiff was dropped off at a gas station on the day of the murder, he was detailing what Plaintiff told him, not that the evidence bore out that description.  The opposite is true for

some of the other "lies", Defendant Fox was testifying as to what the scene depicted, not to what Plaintiff confessed to.   For example, Defendant Fox stated that a white bag was over Mrs. Yi's head, not that Plaintiff had described a white bag.  Further, Defendant Fox actually told the grand jury that some of Plaintiff's statements differed from the physical evidence.  Thus, Defendant Fox was transparent with the grand jury about the inconsistencies.  For those statements that were actually incorrect, the Court finds that these statements would not have mislead the grand jury about Plaintiff's guilt.  For example, the Court simply cannot hold that saying "purse" instead of "wallet" amounts to a constitutional violation.

### D. Failure to Present Exculpatory Evidence To Grand Jury

Plaintiff argues that officers failed to present exculpatory evidence to the grand jury. Specifically he alleges that that the officers unlawfully suppressed the video of Plaintiff going to the gas station that indicated he was dropped off at the gas station on Wednesday, not on Monday when the murders occurred, failed to disclose DNA evidence linking another man to the crime, lost Plaintiff's diagram of the Yi's house which did not match the actual home, and that detectives failed to turn over investigation notes pointing to other leads.  Plaintiff largely fails to support these allegations with citations to the record.  Further some of the evidence that Defendants allegedly failed to provide the grand jury was not available at the time the grand jury was convened, for example the DNA at the crime scene was not linked to another suspect until mid-2008, months after the grand jury.

### E.    Misconduct During Prosecution

In his Response to the Motion for Summary Judgment, Plaintiff includes a section entitled "Misconduct During Prosecution."  Plaintiff fails to make clear which claim listed in his Amended Complaint that this section is intended to support.   Thus, it is unclear what law

Plaintiff is bringing these allegations under and what standard should apply; Plaintiff makes passing and disjointed references to the Eighth Amendment and <u>Brady</u> as the legal basis for his claim.  It is also possible that these allegations are part of Plaintiff's due process violation claim. Despite this lack of clarity, the Court considered the allegations made in this section.

In a bizarre, rambling passage, Plaintiff's counsel accuses Defendant Officers of conspiring with Bloomfield, the man who ultimately confessed to killing the Yi's, to have Lee and Plaintiff killed while they were being wrongfully held for the murders.  Plaintiff also alleges that Defendant Officers promised Bloomfield rewards, such as conjugal visits, if Bloomfield would implicate Lee and Plaintiff in the murders.  Defendants of course deny that such a conspiracy existed, and Plaintiff does not provide any support for his allegation that Defendant Officers conspired to have Plaintiff killed.  However, Plaintiff does provide the testimony of Bloomfield who alleges that the investigating detectives pressured him to implicate Plaintiff and Lee.  However, Bloomfield never implicated Plaintiff in the murders, therefore Plaintiff has no injury to show for the pressure Defendants exerted on Bloomfield to implicate Plaintiff.

This section also alleges that Defendants suppressed exculpatory evidence not only from the grand jury but also from the prosecutor and the state court in the criminal trial.  Plaintiff alleges that Defendants lost surveillance video from the gas station, Plaintiff's diagram of the Yi's home detailing a two-story rather than a one-story house, and Defendants failed to inform the prosecutor of leads pointing to a suspect other than Plaintiff.  Again, Plaintiff fails to cite to the factual record in regards to a number of these allegations.  Further, Plaintiff's allegations are largely conclusory; he does not cite any testimony from the prosecution team noting that the evidence was not turned over.  Additionally, Plaintiff alleges that evidence was deliberately destroyed without any evidence show that the destruction was deliberate rather than

unintentional.   Moreover, Plaintiff's claim is based upon <u>Brady</u> violations.   However, because Plaintiff never proceeded to trial, he cannot base his Fourteenth Amendment claim for suppression of exculpatory evidence on <u>Brady</u>.   The Tenth Circuit rejected similar claims in <u>Becker v. Kroll</u>, 494 F.3d 904 (10th Cir. 2007).   In <u>Becker</u>, the plaintiff argued that the defendant officers violated her due process rights as outlined in <u>Brady</u> by suppressing exculpatory evidence.   The Tenth Circuit rejected this argument noting, "[the plaintiff] never proceeded to trial, and she cannot therefore rest her § 1983 claims on a <u>Brady</u> violation."   <u>Id</u>, at 924 citing <u>Brady</u>, 373 U.S. at 86–88, 83 S.Ct. 1194 (framing the right to exculpatory evidence only in terms of providing a fair trial).   The Tenth Circuit pointed out the elements of a <u>Brady</u> violation, the defendant must prove "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense."   <u>Id.</u> (citation omitted).   A plaintiff cannot establish materiality unless the case goes to trial and the suppression of exculpatory evidence affects the outcome.   <u>See</u> <u>United States v. Bagley,</u> 473 U.S. 667, 678 (1985) ("[A] constitutional error occurs ... only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.").   "Thus, [Plaintiff] suffered no due process violation based on <u>Brady</u> and the suppression of evidence."   <u>Becker</u>, at 924 (citing <u>Bagley</u> ("S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial.")).   Accordingly, the Court finds that these allegations do not support a viable legal claim.

## IV.    Count IV- State Tort Claims

Count IV of Plaintiff's First Amended Complaint outlines state law claims for the torts of false arrest, false imprisonment, and malicious prosecution.[4]   All three of these claims turn upon

---

[4]   The Court interprets Plaintiff's state law malicious prosecution claim to be claim for malicious abuse of process, because New Mexico has combined the torts of malicious prosecution and abuse of process into one claim and no

whether the defendant officers had probable cause to arrest Plaintiff.  See Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159,¶12, 143 N.M. 84, 88, 173 P.3d 6, 10 ("An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest.") (citation omitted); id., ¶123 (noting that one of the elements of a malicious abuse of process claim is that the defendant "commits an act in the use of process that would not be proper in the regular process of the claim. […]The element of an improper act in the use of process can be established by showing that proceedings were initiated without probable cause.") (citation omitted).[5]  The Court has previously determined that Defendant Officers had probable cause to arrest Plaintiff. Accordingly, Defendants are entitled to summary judgment on Count IV of Plaintiff's First Amended Complaint.  Further, Defendants are entitled to summary judgment on the state law malicious prosecution claim referenced in Count II of Plaintiff's First Amended Complaint.

## V.    Miranda Violation

In their Motion, Defendants state that at some point during the questioning Plaintiff told Defendants that he wanted a lawyer, then later voluntarily agreed to continue questioning. Although Plaintiff's Complaint did not state a Miranda violation, in his Response Plaintiff alleges that there is a viable Miranda violation.  Defendants object to Plaintiff's late addition of a Miranda claim.  Plaintiff argues that he was not aware of a potential Miranda claim until Defendants included Plaintiff's statement in their list of undisputed material facts.  This

---

longer recognizes the individual torts as separate claims. See DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, 124 N.M. 512, 518, 953 P.2d 277, 283 overruled on other grounds by Durham v. Guest, 2009-NMSC-007, 145 N.M. 694, 204 P.3d 19 ("[W]e conclude that the [] torts [of malicious prosecution and abuse of process] should be restated as a single cause of action, which shall be known as 'malicious abuse of process'").

[5]   This element of a malicious abuse of process claim can also be satisfied "by establishing an 'irregularity or impropriety suggesting extortion, delay, or harassment.'" Fleetwood Retail Corp. of N.M., 2007–NMSC–047, ¶ 12; DeVaney, 1998–NMSC–001, ¶¶ 21–22.  However, Plaintiff's malicious abuse of process claim appears to be based solely on the lack of probable cause theory because Plaintiff has not alleged another type of irregularity.

argument is without merit; if Plaintiff did in fact tell Defendants that he wanted a lawyer, he would have known about the existence of a potential Miranda violation before the Complaint was filed.  The Tenth Circuit treats a claim raised for the first time in a response to a summary judgment motion as a request to amend.  See  Martinez v. Potter, 347 F.3d 1208, 1211-12 (10th Cir. 2003).  The same factors apply as the Court would consider on a motion to amend.  See id. Here, the Court finds that an amendment at this time would be improper. Discovery and dispositive motions deadlines have long since passed.  Further, there is no excuse for failing to raise this claim earlier, because regardless of Defendants' statement of the facts, Plaintiff has always been aware that he requested a lawyer and continued to be questioned.

Even if the Court were inclined to allow an amendment at this late juncture, Plaintiff's Miranda claim would still fail.  Plaintiff's Miranda violation was part of his interrogation and was actually raised in regards to his Motion to Suppress in the state criminal case. See (**Doc. No. 186-1**), Transcript of state suppression hearing, p. 18, ll. 1-3.   Plaintiff was repeatedly asked during the suppression hearing if he was aware of his Miranda rights and whether he voluntarily waived those rights and agreed to speak with the officers; he repeatedly answered in the affirmative.  See id.  Thus, Plaintiff would be collaterally estopped from raising this issue now for the same reasons the Court has already stated.

**IT IS THEREFORE ORDERED** that Individual Defendants' Motion for Summary Judgment on Qualified Immunity as to Plaintiff's Constitutional Claims and Individual Defendants' and City's Motion for Summary Judgment on State Tort Claims (**Doc. No. 122**) is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims against the individual defendants set forth in Counts I and II, and Count IV in its entirety are dismissed at this time.  However, as

previously noted by the Court, this ruling may change based upon Plaintiff's Motion to Reconsider provided that any such motion is filed within ninety (90) days of the entry of this Memorandum Opinion and Order.

_____

UNITED STATES DISTRICT JUDGE